In the United States Court of Federal Claims

No. 18-1562V

(Filed Under Seal:  August 26, 2021)

(Reissued:  September 13, 2021)[1]

|  |  |
|---|---|
| **LINDA WIRTSHAFTER,** | ) ) ) |
| *Petitioner,* | ) ) |
| v. | ) ) ) |
| **SECRETARY OF HEALTH AND HUMAN SERVICES,** | ) ) ) ) |
| *Respondent.* | ) ) ) |

*Howard D. Mishkind*, Mishkind Law Firm Co., L.P.A., Beachwood, OH, for Petitioner.

*Ryan D. Pyles*, United States Department of Justice, Civil Division, Washington, D.C., for Respondent.  On the brief were *Brian M. Boynton*, Acting Assistant Attorney General, Civil Division, *C. Salvatore D'Alessio*, Acting Director, *Heather L. Pearlman*, Acting Deputy Director, and *Lara A. Englund*, Assistant Director, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**

*SOLOMSON*, **Judge.**

Petitioner, Ms. Linda Wirtshafter, seeks review of an order denying attorney's fees and costs issued by Special Master Christian J. Moran on April 16, 2021.  Petitioner brought this action pursuant to the National Vaccine Injury Compensation Program, 42 U.S.C. §§ 300aa-10–34 (2018) ("Vaccine Act"), alleging that the influenza ("flu") vaccine she received on October 15, 2015 caused her to suffer from small fiber neuropathy.  Special Master Moran denied compensation, finding that Petitioner failed to establish that her vaccination pre-dated her medical condition.  Petitioner subsequently sought attorney's fees and costs pursuant to the Vaccine Act, which the Special Master also

---

[1] On August 26, 2021, the Court issued this opinion and order under seal in accordance with Rule 18(b) of the Vaccine Rules (Appendix B) of the Court of Federal Claims.  The Court provided the parties 14 days to propose redactions.  The parties did not propose any redactions and, accordingly, the Court reissues this opinion and order in its original form.

denied, finding that there was no reasonable basis for her claim.  This case is now before the Court on Petitioner's motion for review of the Special Master's fee decision.  For the reasons explained below, the Court grants Petitioner's motion for review and remands for the Special Master to consider an award of costs and fees, not inconsistent with this decision.

I.     FACTUAL BACKGROUND

On March 28, 2013, prior to vaccination, Ms. Wirtshafter saw her primary care physician, Dr. Michael B. Eckstein, for an "area of hyperesthesia over the upper thoracic spine for approximately 3 months."  ECF No. 1-6 at 18.  Dr. Eckstein diagnosed Ms. Wirtshafter with a "[b]urning [s]ensation ([d]ysesthesia)" with an uncertain etiology.  *Id*. at 19.  On February 22, 2014, Ms. Wirtshafter returned to Dr. Eckstein complaining of continuing hypersensitivity of the skin at the base of her neck, and Dr. Eckstein again diagnosed her with a burning sensation.  *Id*. at 20-21.

On October 15, 2015, Ms. Wirtshafter received an influenza vaccination.  ECF No. 1-4.  The next day, Ms. Wirtshafter saw Dr. Eckstein for "[t]ingling in both legs off-and-on for one week without associated weakness."  ECF No. 1-6 at 16.  Ms. Wirtshafter's "active problems" at the time were a burning sensation, a disc disorder of her cervical region, and spondylosis of her cervical region without myelopathy or radiculopathy.  *Id*.  Dr. Eckstein's noted impression of Ms. Wirtshafter was "[t]ingling in lower extremities of unclear etiology."  *Id*. at 17.

On October 31, 2015, a hand-written note – presumably drafted by Dr. Eckstein – documented, "Tingling in arms, legs, [and] face at this time.  Symptoms started in the arms and legs [three weeks] ago then resolved. Diffuse tingling has returned."  *Id*. at 25.  Dr. Eckstein also noted that Ms. Wirtshafter was to go "[t]o Neuro next week."  *Id*.

On November 3, 2015, Ms. Wirtshafter saw a neurologist, Dr. Stefan Dupont, for "[t]ingling all over [her] body."  ECF No. 1-7 at 12.  Ms. Wirtshafter reported that, "since the visit with [Dr. Eckstein], tingling has gone everywhere including face, chest, torso. More on left but occurs bilaterally."  *Id*.  Dr. Dupont listed an "active problem" as "tingling in extremities."  *Id*. at 13.  Dr. Dupont noted that he would "start . . . workup for neuropathy even though [he] did not find any abnormalities on the examination. . . . I'll likely end up sending her to a neuromuscular specialist . . . for further evaluation if I do not find any abnormalities on the testing I have ordered. Possible somatization but cannot be sure at this time."  *Id* at 17.

On November 24, 2015, Ms. Wirtshafter saw Dr. Deborah Venesy at the Cleveland Clinic Foundation Center for Spine Health for "diffuse paresthesia in arms, legs, chest and occasional lips/face" that had been occurring for five to six weeks with a progressive onset of symptoms.  ECF No. 1-9 at 1.  Dr. Venesy reported that the results

from Dr. Dupont's workup were not yet known. *Id*. Dr. Venesy also indicated a plan to refer Ms. Wirtshafter to a neuromuscular specialist "re possible small fiber PN eval." *Id*. at 4.

On December 8, 2015, Ms. Wirtshafter again saw Dr. Dupont, who noted that "[v]ery extensive serum evaluations did not reveal any abnormalities." ECF No. 1-7 at 11. Despite Ms. Wirtshafter's concern about multiple sclerosis or a brain tumor, Dr. Dupont explained to her that he did not have a neurological explanation for her symptoms, nor did he have a medical justification to order the MRI she requested. *Id*; *see also id*. at 1. Ms. Wirtshafter informed Dr. Dupont that she had made appointments with several neuromuscular specialists in order to explore the possibility of small fiber neuropathy. *Id*. at 11.

On January 13, 2016, Ms. Wirtshafter saw a neurologist, Dr. Bashar Katirji, based on a referral from Dr. Eckstein. ECF No. 1-10 at 10. Ms. Wirtshafter reported "tingling, pins and needles sensation all over her body" that "started in October 2015." *Id*. Ms. Wirtshafter reported that she initially noticed the sensation in her legs, but then it spread all over. *Id*. Dr. Katirji noted that the results of the tests ordered by Dr. Eckstein, including an EMG and labs, were normal. *Id*. Dr. Katirji ultimately ordered further testing, including an MRI and an autonomic test for small fiber neuropathy, and prescribed Ms. Wirtshafter with gabapentin for her tingling. *Id*. at 14.

On March 29, 2016, Dr. Katirji performed a skin biopsy on Ms. Wirtshafter's left leg for small fiber neuropathy testing. ECF No. 1-10 at 2. Dr. Katirji noted that Ms. Wirtshafter's skin was still very sensitive to the touch despite a normal MRI and normal lab results. *Id*.

On April 6, 2016, Ms. Wirtshafter was examined by another neurologist, Dr. Jinny Tavee – upon a referral from Dr. Venesy – "for an opinion regarding small fiber neuropathy." ECF No. 1-11 at 1. Dr. Tavee's notes recounted Ms. Wirtshafter's medical history and recorded that "[p]rior to the *abrupt spread of symptoms*, [Ms. Wirtshafter] had the flu shot at CVS but can't remember exactly when she had it." *Id*. (emphasis added). Dr. Tavee also noted that small fiber neuropathy was suspected, but she was awaiting results from the biopsy. *Id*. Pending biopsy results, Dr. Tavee concluded: "Suspect nonlength dependent generalized polyneuropathy affecting small sensory fibers that may represent the small fiber variant of Guillain-[B]arre syndrome that was triggered by the flu vaccination." *Id*. at 3.

On May 5, 2016, Ms. Wirtshafter emailed Dr. Tavee's office to report that her skin biopsy was negative. ECF No. 1-11 at 11-12. On May 24, 2016, however, Dr. Tavee's office contacted Ms. Wirtshafter with Dr. Tavee's interpretation of the skin biopsy: "There was an abnormality. The lower leg was normal . . . , but the upper leg showed

3

only 7.4 fibers/mm with normal being over 8. This is borderline reduced but is enough to make the diagnosis of [small fiber neuropathy]." *Id*. at 21.

On July 21, 2016, at a follow-up appointment, Dr. Tavee again noted that the "[s]uspected etiology immune mediated related to preceding flu vaccination." ECF No. 1-11 at 36. Her written impression indicated that the "[p]ossible immune mediated component has now evolved to chronic [small fiber neuropathy]." *Id*. Dr. Tavee listed Ms. Wirtshafter's diagnosis as "[s]mall fiber neuropathy (HCC)" and created a plan to manage her symptoms. *Id*. at 36-37.

Dr. Tavee subsequently left the Cleveland Clinic. ECF No. 1-3 at 2. Consequently, on October 20, 2017, Ms. Wirtshafter saw another neurologist, Dr. Steven Shook, who took over her treatment. ECF No. 1-13 at 1. In Ms. Wirtshafter's medical history, Dr. Shook wrote that within a few days of receiving her flu vaccination, Ms. Wirtshafter had experienced neuropathic pain in all of her limbs, face and chest. *Id*. He also wrote that while the skin biopsy had demonstrated "no definite [small fiber neuropathy]," Ms. Wirtshafter's "[h]istory of preceding flu vaccination was suggestive of possible immune-mediated phenomenon." *Id*.

On October 8, 2018, Dr. Shook completed an affidavit for Ms. Wirtshafter in which he opined that "her neuropathic pain is permanent and will continue to cause her ongoing symptoms." ECF No. 1-5 at 2. Dr. Shook concluded that, "[b]ased on the history provided by [Ms. Wirtshafter] and information available to me, it is my opinion that there is a causal relationship between her flu vaccination and her ongoing neuropathic pain which is suggestive of a possible immune-mediated phenomenon related to her flu vaccination." *Id*.

## II.  PROCEDURAL HISTORY

On October 9, 2018, Ms. Wirtshafter filed a petition in this Court, alleging that "[a]s a direct and proximate result of the receipt of [the flu] vaccine, [she] developed a Small Fiber Neuropathy (a variant of GBS); the onset of tingling in her legs within 24 hours of receiving the vaccine, followed by tingling in her arms and face." ECF No. 1 ¶ 3. Ms. Wirtshafter maintained that she has no other medical conditions that explain her symptoms, which "cause[] difficulty in performing activities of daily living and work." *Id*. ¶¶ 4, 5.

On October 19, 2018, the Special Master directed Ms. Wirtshafter to file additional information regarding an "important contradiction between the medical records and the affidavit provided by the petitioner." ECF No. 6 at 2. Specifically, the Special Master described the following problem:

> In her affidavit, Ms. Wirtshafter avers that she received her

4

> flu vaccination on October 15, 2015 and that the next day she "started having tingling in my legs that subsequently spread to my arms and face." Exhibit 1 at ¶ 4. She further states that she was seen by her primary care physician, Dr. Eckstein, on the same date that the tingling symptoms began. *Id*. While the medical records show that Ms. Wirtshafter was seen by Dr. Eckstein on October 16, 2015, the medical records state that her chief complaint was "tingling in legs off-and-on for one-week." Exhibit 4 at 16. Under history of present illness, the records provide further detail, stating that she had "tingling in both legs off-and-on for one week without associated weakness.". . . Thus, the medical records indicate that the onset of the symptoms occurred close to a week prior to her October 15, 2015 flu vaccination.

*Id*. The Special Master thus instructed Ms. Wirtshafter to complete an additional affidavit and to file any additional records necessary to clarify the date of the onset of her symptoms relative to when the flu vaccine was administered. *Id*. On October 30, 2018, Ms. Wirtshafter filed her affidavit and additional medical records. ECF No. 7; *see also* ECF Nos. 7-1 – 7-8.

In Ms. Wirtshafter's affidavit – specifically, in answering the question whether she had "any explanation for why the medical records from the visit with Dr. Eckstein state that the tingling started approximately a week before this visit?" – Ms. Wirtshafter responded:

> My symptoms began the day after the flu shot. I do not know where Dr. Eckstein got that information about it starting approximately a week before the visit. I remember specifically noticing the symptoms at work a day after the flu shot and calling his office and was surprised I got an appointment that same day.

ECF No. 7-1 at 2. Consequently, the Special Master held a status conference on November 20, 2018 to discuss the evidence that Ms. Wirtshafter provided. Minute Entry, Nov. 21, 2018. The Special Master "explained that because of the discrepancy between Dr. Eckstein's record and Ms. Wirtshafter's affidavit, a hearing to determine when her neurologic problems began would probably be required. In the meantime, Ms. Wirtshafter could gather additional affidavits from people knowledgeable about her health around October 15, 2015." *Wirtshafter v. Sec'y of Health & Hum. Servs.*, No. 18-1562V, 2021 WL 1906258, at *3 (Fed. Cl. Apr. 16, 2021). Ms. Wirtshafter subsequently filed additional, supporting affidavits from family and friends, as well as copies of her calendars from the relevant time period. ECF No. 10.

5

On September 23, 2019, the Secretary filed his report, in which he asserted that because Ms. Wirtshafter's symptoms pre-dated her vaccination, she could not establish a causal relationship between the vaccine and her injury. ECF No. 20. The Secretary thus argued that Ms. Wirtshafter was not entitled to compensation under the Vaccine Act and requested that the Special Master dismiss the case. *Id*.

On October 31, 2019, the Special Master held a status conference to discuss the Secretary's report. Minute Entry, Oct. 31, 2019; *see also* ECF No. 22. During the status conference, the Special Master "discussed with the parties two obstacles with respect to chronology presented in respondent's report: (1) that petitioner's tingling appears from the medical records to have pre-dated her date of vaccination, and (2) that the alleged one-day onset of petitioner's symptoms appears too rapid." ECF No. 22 at 1. After discussing the issues with counsel for both parties, the Special Master ordered Ms. Wirtshafter either to file a status report indicating her intent to proceed with litigation or, in the alternative, to move for voluntary dismissal. *Id*. at 1-2. The Special Master apparently abandoned his earlier view that a hearing would be necessary to address inconsistencies in the record.

On December 19, 2019, Ms. Wirtshafter filed a motion "for a decision by the Special Master dismissing her case" – effectively electing voluntary dismissal. ECF No. 23 at 1. In her motion, Ms. Wirtshafter informed the Special Master that "[a]n investigation of the facts and science supporting her case has demonstrated to Petitioner that she will be unable to prove that she is entitled to compensation in the Vaccine Program. In these circumstances, to proceed further would be unreasonable and would waste the resources of the Court . . . ." *Id*. ¶¶ 1-2. As a result, the Special Master dismissed her case on December 20, 2019. ECF No. 24 (*Wirtshafter v. Sec'y of Health & Hum. Servs.*, No. 18-1562V, 2019 WL 7580153 (Fed. Cl. Dec. 20, 2019) (characterizing Ms. Wirtshafter's dismissal as "involuntary" pursuant to 42 U.S.C. § 300aa—21(b), thereby "protecting her right to file a civil action in the future").

On January 29, 2020, Ms. Wirtshafter filed a motion for attorney's fees and costs. ECF No. 28. The Secretary filed his opposition on February 12, 2020, and Ms. Wirtshafter filed her reply on February 18, 2020. ECF Nos. 29, 30. The Special Master then stayed the adjudication pending the outcome of *Cottingham on Behalf of K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337 (Fed. Cir. 2020), a vaccine fee petition case.

After the Federal Circuit's adjudication of *Cottingham*, the parties filed briefs reiterating their positions. ECF Nos. 32, 33. The Federal Circuit then issued another precedential opinion concerning the reasonable basis standard, *James-Cornelius on Behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374 (Fed. Cir. 2021), to which the Special Master gave both parties an opportunity to respond. ECF No. 34. The parties again filed supplemental briefs. ECF Nos. 35, 36.

On April 16, 2021, the Special Master issued a decision denying Ms. Wirtshafter's motion for attorney's fees and costs. ECF No. 37. In his decision, the Special Master found that Ms. Wirtshafter lacked a reasonable basis for her claim and thus was not eligible for an award of fees. *Id*. at 9.

On May 14, 2021, Ms. Wirtshafter filed a motion for review, which is pending before this Court. ECF Nos. 39, 39-1 ("Pet. Mot."). The Secretary filed a response on June 14, 2021. ECF No. 41 ("Sec. Resp."). This motion is currently ripe for adjudication.

### III. JURISDICTION AND STANDARD OF REVIEW

This Court possesses jurisdiction, pursuant to the Vaccine Act, to review a special master's decision upon the filing of a petition from the unsuccessful party within thirty days of that decision. 42 U.S.C. § 300aa-12(e)(1). The Court may:

> (A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,
>
> (B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or
>
> (C) remand the petition to the special master for further action in accordance with the court's direction.

*Id*. § 300aa-12(e)(2).

This Court reviews a decision of the special master to determine if it is "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Rodriguez v. Sec'y of HHS*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (quoting *Avera v. Sec'y of HHS*, 515 F.3d 1343, 1347 (Fed. Cir. 2008)). The special master has abused his discretion if his decision: "'(1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) follows from a record that contains no evidence on which the decision-making body could rationally base its decision.'" *Ninestar Tech. Co. v. Int'l Trade Comm'n*, 667 F.3d 1373, 1379 (Fed. Cir. 2012) (quoting *Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997)).

## IV. THE SPECIAL MASTER ABUSED HIS DISCRETION IN DETERMINING THERE WAS NO "REASONABLE BASIS" FOR PETITIONER'S CLAIM

Under the Vaccine Act, a petitioner who is unsuccessful on her claim may nonetheless be eligible for an award of reasonable attorney's fees and costs "'if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.'" *James-Cornelius*, 984 F.3d at 1376 (quoting 42 U.S.C. § 300aa-15(e)(1)). The Federal Circuit has explained that "'good faith and reasonable basis' are 'two distinct facets'" which both must be met in order for a petitioner to qualify for an award of fees and costs. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. United States*, 116 Fed. Cl. 276, 289 (2014)). In the instant matter, the Secretary does not contest that the claim for compensation was brought in good faith and thus that inquiry is not at issue here. The Special Master concluded, however, that Ms. Wirtshafter did not have a "reasonable basis" for her claim and thus was not eligible for attorney's fees.

When determining whether a petitioner has a reasonable basis for filing a claim, our Court "often relies on 'an objective standard determined by the totality of the circumstances.'" *Cottingham*, 971 F.3d at 1344 (quoting *Chuisano*, 116 Fed. Cl. at 286). In practice, however, courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis. The Federal Circuit has held that "the quantum of objective evidence needed to establish reasonable basis for a claim, including causation, is 'lower than the preponderant evidence standard required to prove entitlement to compensation,' but 'more than a mere scintilla.'" *James-Cornelius*, 984 F.3d at 1379 (quoting *Cottingham*, 971 F.3d at 1346). While the Federal Circuit has not explained with any precision how to assess whether a quantum of evidence constitutes "more than a mere scintilla," it is generally accepted that "a petitioner must furnish *some evidence* in support of the 'claim for which the petition is brought' to establish the statutory requirement of reasonable basis." *Chuisano*, 116 Fed. Cl. at 288 (emphasis added) (quoting 42 U.S.C. § 300aa–15(e)(1)).

Further, the Federal Circuit has clarified "that the failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion." *Cottingham*, 971 F.3d at 1345. Outside of this narrow clarification, however, the specific amount and quality of evidence necessary to constitute a reasonable basis remains undefined.

In her petition, Ms. Wirtshafter advances two objections to the Special Master's decision denying attorney's fees, although she does not clearly delineate between them in her argument. Pl. Mot. at 2. Ms. Wirtshafter asserts, first, that the Special Master failed to consider the evidence under the "totality of the circumstances" standard, and, second, that the Special Master improperly concluded that Ms. Wirtshafter did not have a reasonable basis for her claim. *Id*. The Court agrees with Ms. Wirtshafter's contention

8

that the Special Master abused his discretion in determining that she did not have a reasonable basis for her claim.

While the Special Master correctly recited that the reasonable basis standard constitutes a lower burden of proof than a preponderance of the evidence, ECF No. 37 at 15, he improperly determined that Ms. Wirtshafter did not provide the quantum of evidence necessary to establish a reasonable basis for her claim. As discussed, *supra*, despite the enigma that surrounds the amount and quality of evidence necessary to establish a reasonable basis for a vaccine compensation claim, our Court has consistently required no more than "some evidence" to meet the statutory requirement in order to recover fees. *Gomez v. Sec'y of Health & Hum. Servs.*, No. 17-1800V, 2019 WL 7480769, at *4 (Fed. Cl. Dec. 6, 2019); *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 379 (2017); *Curran v. Sec'y of Health & Hum. Servs.*, 130 Fed. Cl. 1, 5 (2017); *Chuisano*, 116 Fed. Cl. at 288. Indeed, the Special Master himself articulated the very same standard in various other decisions and **in a previous order issued in this very case**. *See, e.g.*, *Graham v. Sec'y of Health & Hum. Servs.*, No. 14-048V, 2015 WL 5334242, at *6 (Fed. Cl. Aug. 4, 2015), *aff'd*, 124 Fed. Cl. 574 (2015); *see also* ECF No. 6 ("The undersigned has interpreted 'reasonable basis' as setting a standard that is satisfied by presenting *some evidence* to support the claim for which the petition was brought." (emphasis added)). In the instant case, despite expressly acknowledging that Ms. Wirtshafter's medical records "provide some facial support" for her claim, ECF No. 37 at 12, the Special Master inexplicably determined that Ms. Wirtshafter did not present evidence sufficient to meet the reasonable basis standard, in reliance upon what the Court can characterize as nothing more than a merits decision on the compensation claim itself. The Court disagrees, as a matter of law, with the Special Master's conclusion regarding the fee petition.

In denying the fee petition at issue, the Special Master considered four pieces of documentary evidence Ms. Wirtshafter submitted: (1) her affidavit, (2) Dr. Katirji's medical records, (3) Dr. Tavee's medical records, and (4) Dr. Shook's affidavit. ECF No. 37 at 6 (citing ECF No. 32 at 4-5); *see also* ECF No. 37 at 9-15. In analyzing that evidence, the Special Master concluded that "the first two contribute relatively little, if anything, to the evaluation of reasonable basis." ECF No. 37 at 9. He correctly acknowledged that Ms. Wirtshafter's affidavit "supports her good faith, a condition separate from reasonable basis required for eligibility for attorneys' fees." *Id*. The Special Master also quickly dismissed the value of Dr. Katirji's records, because although they "offer[ed] some support for Ms. Wirtshafter," they were "somewhat imprecise" and did not associate Ms. Wirtshafter's symptoms with the flu vaccine (or discuss the flu vaccine at all). *Id*. at 10.

The Special Master thus focused extensively on two of the four items of evidence referenced above – Dr. Tavee's medical records and Dr. Shook's affidavit – and ultimately concluded that "Dr. Tavee's reports and Dr. Shook's affidavit either directly

contradict Ms. Wirtshafter's claim or are based on incorrect information." ECF No. 37 at 15. To support his rationale for discounting these pieces of evidence, the Special Master relied heavily on *Murphy v. Sec'y of Dep't of Health & Hum. Servs.*, a case in which the special master determined that an award of fees was inappropriate because "evidence in the medical records and other written records contradict[ed] the claims brought forth in the petition." 30 Fed. Cl. 60, 61 (1993), *aff'd without op.*, 48 F.3d 1236 (Fed. Cir. 1995). While Special Master Moran in this case acknowledged that neither the special master's opinion nor the Court's subsequent denial of review in *Murphy* was binding, he referred to *Murphy* as "some appellate guidance" that "points against a finding of reasonable basis in Ms. Wirtshafter's case." ECF No. 37 at 13.

This Court rejects the Special Master's reliance on *Murphy*. The Federal Circuit affirmed *Murphy* without an opinion, pursuant to Rule 36 of the Rules of the United States Court of Appeals for the Federal Circuit. "Since there is no opinion, a Rule 36 judgment simply confirms that the trial court entered the correct judgment. It does not endorse or reject any specific part of the trial court's reasoning." *Rates Tech., Inc. v. Mediatrix Telecom, Inc.*, 688 F.3d 742, 750 (Fed. Cir. 2012). Accordingly, the Federal Circuit's affirmance in *Murphy* cannot serve as either "appellate guidance" for the rationale provided by the Court (or the special master) for the denial of fees in that case or to light the way for the Court in this matter.

Moreover, in the instant case, Dr. Tavee's medical records do not directly contradict Ms. Wirtshafter's claim. In fact, Dr. Tavee, Ms. Wirtshafter's treating neurologist at the time, directly links Ms. Wirtshafter's symptoms with her flu vaccination. ECF No. 1-11 at 3 (Dr. Tavee's noting that he "[s]uspect[s] nonlength dependent generalized polyneuropathy affecting small sensory fibers that may represent the small fiber variant of Guillain-[B]arre syndrome that was triggered by the flu vaccination"), 36 (Dr. Tavee's concluding "[s]uspected etiology immune mediated related to preceding flu vaccination."). While the Special Master disregarded Dr. Tavee's medical records and Dr. Shook's subsequent adoption of them as being "based on incorrect information," this conclusion is demonstrably false. In Dr. Tavee's initial consultation with Ms. Wirtshafter, Dr. Tavee noted that Ms. Wirtshafter's onset of symptoms had occurred in "October 2015" and had "abruptly spread" several weeks later. ECF No. 1-11 at 1. While admittedly there is a discrepancy between Dr. Eckstein's account that the onset of Ms. Wirtshafter's symptoms pre-dated her vaccination and Ms. Wirtshafter's own affidavit indicating the onset of symptoms one day after vaccination, Dr. Tavee's initial records, on their face, are consistent with either account: Ms. Wirtshafter did receive her flu vaccine in October 2015, and her symptoms did subsequently spread.

Further, although Dr. Tavee was *initially* unaware of the exact date of Ms. Wirtshafter's vaccination, Ms. Wirtshafter subsequently informed Dr. Tavee of the correct date:

10

> I wanted to let you know that I checked with CVS and my Dr.'s office and found out when I got the flu shot and when I went to my internist concerning my symptoms. I got the flu shot on October 15th and saw my internist, Dr. Eckstein, on the 16th . . . I then went back to Dr. Eckstein on the 31st (two weeks later) when things seemed to get worse and scary feeling.

ECF No. 1-11 at 7.  Ms. Wirtshafter provided this information to Dr. Tavee on April 7, 2016, just one day after her initial consultation.  Dr. Tavee, armed with the correct date of Ms. Wirtshafter's vaccination, nevertheless *subsequently* described the suspected etiology of Ms. Wirtshafter's small fiber neuropathy, in the "History Since Last Evaluation" section of her medical records, as the "preceding flu vaccination."  *Id*. at 36.  While the Court agrees with the Special Master that there is some conflicting information in Ms. Wirtshafter's medical records regarding the date of the onset of her symptoms,[2] and while the merits of her compensation claim were *perhaps* correctly doubted, the Special Master improperly categorically discounted Dr. Tavee's opinion as "based on inaccurate information" when that simply is not the case.

Another reason upon which the Special Master relies in concluding that Ms. Wirtshafter did not have a reasonable basis for her claim is that "even if Dr. Eckstein erred in stating that Ms. Wirtshafter's symptoms began before the vaccination," Ms. Wirtshafter still did not have a sufficiently long latency between her vaccination and her symptoms to support a finding of causation.  ECF No. 37 at 14.  The Special Master emphasizes that Dr. Shook's opinion is premised upon a finding that Ms. Wirtshafter had "a history of neuropathic pain in all limbs, face and chest within *a few days* of receiving her flu shot," ECF No. 37 at 14 (emphasis in original) (citing ECF No. 1-5),

---

[2] In claiming that Ms. Wirtshafter "contributed to inconsistencies in medical records," the Special Master discredits Dr. Taveee's and Dr. Shook's attribution of causation based on Dr. Eckstein's records.  ECF No. 37 at 13-14.  The Special Master concludes that "[a]s a contemporaneous statement given in the context of seeking medical treatment, Dr. Eckstein's record is presumed accurate."  *Id*. at 13.  Notably, however, as acknowledged by the Special Master himself in the context of this case, "medical records are not the only type of document and the presumption is not absolute and may be rebutted."  ECF No. 6 (citing *Campbell v. Sec'y of Health & Human Servs.*, 69 Fed. Cl. 775, 779 (2006)).  In fact, the Special Master gave Ms. Wirtshafter a chance to submit additional affidavits to support her claim and, specifically, to explain the discrepancy between her account and Dr. Eckstein's notation, which she did.  ECF No. 10.  These affidavits were not considered or discussed by the Special Master at all in his decision that Ms. Wirtshafter lacked a reasonable basis for her claim.  Although the Court declines to reach the issue, this omission may well constitute an independent, reversible error.  *See Cottingham*, 971 F.3d at 1345 ("[T]he failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion.").

rather than the one-day latency asserted by Ms. Wirtshafter and her affiants. ECF Nos. 7, 10. The Special Master distinguishes between "a few days" and "one day," ultimately concluding that "[t]he difference between one day and three (or more) days is critical." *Id*. This conclusion is premised not on any medical evidence in the record or upon any binding Federal Circuit decision establishing some sort of *per se* medical rule, but rather based only on the fact that the Special Master himself has found one day to be insufficient, but "three days is permissible." *Id*. (citing *Contreras v. Sec'y of Health & Human Servs*., No. 05-626V, 2014 WL 8098606, at *2-8 (Fed. Cl. Spec. Mstr. Oct. 24, 2014) and *Forrest v. Sec'y of Health & Human Servs*., No. 14-1046V, 2019 WL 925495, at *7-8 (Fed. Cl. Spec. Mstr. Jan. 28, 2019)).[3]

This latency rationale also is fundamentally flawed for several reasons. First, as acknowledged by the Special Master himself, his previous opinions and those of other special masters are not binding on the Special Master here, let alone on our Court generally. ECF No. 37 at 13 (citing *Boatmon v. Sec'y of Health & Human Servs*., 941 F.3d 1351, 1358 (Fed. Cir. 2019)); *see also Hanlon v. HHS*, 40 Fed. Cl. 625, 630 (1998) ("Special masters are neither bound by their own decisions nor by cases from the Court of Federal Claims, except, of course, in the same case on remand."), *aff'd*, 191 F.3d 1344 (Fed. Cir. 1999). Consequently, it would not be *unreasonable* – in terms of the fee petition – for Ms. Wirtshafter's counsel to file a claim for a vaccine injury with a possible one-day latency, even considering potentially contrary, non-binding case law.[4] Further, the Special Master cites to 42 C.F.R. § 100.3 ¶ XIV.D, the Vaccine Table[5]

---

[3] Petitioner correctly points out that, in *Forrest*, a decision cited (and issued) by the Special Master as evidence that a one-day latency was insufficient to prove causation, "attorney fees were awarded even though compensation was denied based upon the fact that petitioner brought their petition in good faith and had a reasonable basis for their petition." Pet. Mot. at 10.

[4] In the Secretary's response brief, the Secretary cites *de Bazan v. Sec'y of Health & Hum. Servs*., 539 F.3d 1347, 1350 (Fed. Cir. 2008) for the proposition "that a latency between vaccination and the onset of the neuropathy must be greater than one day in order to reasonably infer causation." Sec. Resp. at 8. In *de Bazan*, however, the Federal Circuit simply affirmed the special master's holding that the petitioner had not proven by a preponderance of the evidence that eleven hours was a medically acceptable timeframe within which acute disseminated encephalomyelitis could manifest after her vaccination, and that de Bazan had failed to prove the proximate temporal relationship element of her prima facie case as a result. *de Bazan*, 539 F.3d at 1353. The court's conclusion regarding the alleged injury at issue in *de Bazan* is inapplicable to the instant case, as there is no evidence in the record that a medically acceptable timeframe for the manifestation of acute disseminated encephalomyelitis is the same timeframe as for small fiber neuropathy, the latter which is at issue here.

[5] Under the Vaccine Act, a petitioner may either show that she suffered a vaccine-specific injury listed on the Vaccine Injury Table within the requisite time-period covered by the Table (a "Table injury"), in which case causation is presumed; or petitioner may demonstrate with reliable medical evidence that a non-Table injury was caused by a vaccine listed on the Table.

12

associating the influenza vaccine with Guillain-Barré syndrome, as evidence that a one-day latency is impermissible. Notably, however, both parties expressly stated at various points throughout the litigation that Ms. Wirtshafter's injury is a non-table injury, and thus, the Vaccine Table is inapposite. *See*, *e.g.*, ECF No. 39-1 at 6 ("As the Court knows, Petitioner's injury was a non-table injury."); *see also* ECF No. 20 at 6 (Secretary's acknowledging that "Petitioner does not specifically allege a Table injury, nor does the record support a Table injury"). While the Special Master's well-informed belief may be that a one-day latency is insufficient to prove causation, the Court rejects, as a matter of law, the contention that it unreasonable for Ms. Wirtshafter's counsel to make a contrary assertion in light of the lack of binding precedent or medical evidence in this matter's record. In any event, the Court views this issue as relevant primarily to the merits of Ms. Wirtshafter's compensation claim generally, rather than serving as an impediment to a determination of whether she had a reasonable basis for her claim sufficient to support a fee petition.[6]

Finally, while certainly not dispositive, the Court notes that the Special Master himself did not appear to believe Ms. Wirtshafter's claim to be entirely lacking of "some evidence" during the pendency of her case. Indeed, at various times throughout the progression of the underlying litigation, the Special Master indicated that the case would be scheduled for a fact hearing and further invited Ms. Wirtshafter to submit additional evidence supporting her timeline of events. *See*, *e.g.*, ECF No. 9 at 2 ("Ms. Wirtshafter was advised that her petition may be heading towards a fact hearing to take oral testimony from her and her affiants."), ECF No. 12 at 1 ("Ms. Wirtshafter's case has been placed on a queue of cases ready to be scheduled for a fact hearing."). In fact, in denying attorney's fees, the Special Master acknowledged that Ms. Wirtshafter had "some valid arguments." ECF No. 37 at 15. While "some valid arguments" may not be

---

Under the second approach, petitioners must provide evidence that shows: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." *Moberly v. HHS*, 592 F.3d 1315, 1322 (Fed. Cir. 2010) (quoting *Althen v. HHS*, 418 F.3d 1274, 1278 (Fed. Cir. 2005)).

[6] The Special Master also discredits Dr. Shook's affidavit by undercutting his assertion that Ms. Wirtshafter's symptoms began "a few days" after her vaccination. ECF No. 37 at 14. While the Court agrees with the Special Master that Dr. Shook's specific timeline is unsupported by the record, the Court notes that the Special Master incorrectly characterizes the Federal Circuit's holding in *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994), as "provid[ing] the reasonable basis standard with some teeth." ECF No. 37 at 14. *Perreira*'s holding, as described by the Federal Circuit itself in its decision, is simply that a petitioner may be awarded costs and fees for the duration of time during which she had a reasonable basis for her claim, rather than for the entire pendency of her case, should the reasonable basis that may have been sufficient to bring the claim cease to exist. *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). There is nothing about this holding that changes the quantum or quality of evidence necessary to prove a reasonable basis.

13

sufficient to allow Ms. Wirtshafter to prevail on the merits, when combined with the evidence in the record that support her petition, they constitute a sufficient quantum of evidence to provide a reasonable basis for a claim.  *See Woods v. Sec'y of Health & Hum. Servs.*, No. 10-377 V, 2012 WL 4010485, at *6-*7 (Fed. Cl. Aug. 23, 2012) ("Respondent's argument, however, *mistakes demonstrating a reasonable basis for the claim with proving entitlement. . . . 'Feasibility,'* not likelihood of success, is the standard [to demonstrate a reasonable basis]." (internal citations omitted) (emphasis added)).

      Accordingly, we find that the record provides, at a minimum, "some evidence" for Ms. Wirtshafter's claim, and thus the Special Master abused his discretion in determining that Ms. Wirtshafter lacked a reasonable basis for her petition.  The Court acknowledges, however, that the Special Master retains discretion to decline to award fees even if a reasonable basis for a fee petition is found.  *Saxton By & Through Saxton v. Sec'y of Dep't of Health & Hum. Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993) ("If the petition for compensation is denied, the special master 'may' award reasonable fees and costs if the petition was brought in good faith and upon a reasonable basis; the statute clearly gives him discretion over whether to make such an award.").  While the Court holds that Ms. Wirtshafter possessed a reasonable factual and legal basis for her compensation claim, the Court remands the case back to the Special Master to determine whether an award of costs and fees is appropriate in light of the Court's findings in this decision.

      It is so **ORDERED.**

                                                    s/Matthew H. Solomson
                                                    Matthew H. Solomson
                                                    Judge